UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SEAPLANE ENTERPRISES LLC and NIELSON BROWN, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. |
| v. | ) ) | 23-10707-FDS |
| CHEN TSUI TUE and DIANA QIAN, | ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM ON SUBJECT-MATTER JURISDICTION

**SAYLOR, C.J.**

This is a dispute arising out of a motor vehicle collision. Plaintiffs Neilson Brown and Seaplane Enterprises LLC have brought suit against Chen Tsui Tue, Diana Qian, Avis Car Rental LLC, and Mercury Insurance Services LLC, seeking reimbursement for property damage. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a).

A threshold question is whether the citizenship of the parties is diverse, and therefore whether this court has subject-matter jurisdiction. Defendants Chen and Qian are citizens of California. The complaint alleges that plaintiff Brown is a citizen of Massachusetts; he now contends that he is a citizen of California. After a period of jurisdictional discovery, and a review of the evidence, the Court concludes that Brown was in fact a citizen of North Carolina when the complaint was filed, and that therefore complete diversity exists.

Determining Brown's "citizenship" is a surprisingly difficult question. As of 2017, he was clearly a citizen of North Carolina. Since then, he has not resided, as that term is commonly used, in any one state. He owns retail clothing stores in California and Massachusetts that are

open seasonally. In essence, he lives in California in the winter and Massachusetts in the summer; he rents a home from a friend in California and stays in a trailer at a campground in Massachusetts, both on a seasonal basis. But he has few, if any, other substantial ties to either jurisdiction. He has kept his North Carolina driver's license; continues to vote in North Carolina; and maintains the registrations for two of his three automobiles, his boat, his house trailer, and (apparently) his boat trailer in North Carolina. He owns no real property in California or Massachusetts. During the Covid-19 pandemic, when his businesses shut down, he returned to North Carolina for nine months, and he continues to spend several weeks a year there.

A person's "citizenship" is determined by his "domicile," which is a term of art under federal law. A person can have only one domicile, and there is a presumption that domicile continues in the absence of affirmative steps to change it. For the reasons that follow, the Court concludes that as of 2023 Brown had not given up his North Carolina domicile for that of any other state.

The Court is of course acutely aware that this determination has no relationship at all to the merits of the case; indeed, it has greatly complicated what would otherwise be a fairly straightforward matter involving an automobile accident. Nonetheless, the Court is duty-bound to determine whether it has subject-matter jurisdiction, and therefore has undertaken the necessary inquiry. And it has concluded that all plaintiffs are diverse from all defendants, and that therefore it has subject-matter jurisdiction over this dispute.

**I.      Background**

    **A.      Factual Background of Claims**

The following facts are set forth as alleged in the first amended complaint ("FAC").

According to the amended complaint, on May 22, 2022, Neilson Brown parked his 2017

Mercedes van, with an attached trailer and boat, on the side of the road on Route 6 in Provincetown, Massachusetts. (FAC ¶¶ 8-10). Brown was parked legally and had his hazard lights flashing. (*Id.* ¶ 10).

Earlier that same day, Chen Tsui Tue and Diana Qian rented a 2021 Honda Accord from Avis Car Rental LLC and drove the vehicle to Provincetown. (*Id.* ¶¶ 11, 13). Chen was the driver and Qian was the insurance policy holder. (*Id.* ¶¶ 11-12). While driving the vehicle, Chen collided with the parked vehicles, "causing significant damage." (*Id.* ¶13-14). According to the police report, Chen "told the officer who arrived on scene that he was traveling approximately 55 miles per hour at the time" of the collision. (*Id.* ¶14).

The complaint also alleges that Brown used the boat involved in the collision "for marketing purposes for his business Seaplane located in Provincetown." (*Id.* ¶ 16). In fact, "Seaplane's online sales, and all local marketing, depend heavily on photos captured on [that] [b]oat in Provincetown." (*Id.* ¶ 17). As a result, the collision "not only caused significant property damage, but it took the [b]oat out of commission causing significant damage to online sales of Seaplane." (*Id.* ¶ 20). The complaint contends that Brown and Seaplane have incurred at least $108,044 in damages. (*Id.* ¶¶ 21-22).

B. **Procedural Background**

On January 16, 2023, plaintiffs Seaplane Enterprises LLC and Neilson Brown filed this action in the Barnstable County Superior Court against defendants Chen Tsui Tue, Diana Qian, Avis Car Rental LLC, and Mercury Services LLC. Defendants removed the action to this court pursuant to 28 U.S.C. § 1441(a) and § 1446, invoking federal jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).

The complaint alleges that Brown is a resident of Provincetown, Massachusetts, and that Seaplane is a limited liability company "with a place of business" in Provincetown. (FAC ¶¶ 1-

2).

After removal, this Court ordered plaintiff Seaplane to file a disclosure statement in compliance with Fed. R. Civ. P. 7.1. Seaplane did so on June 20, 2023. In that statement, it alleged that it was a "California Limited Liability Company and has no parent corporation owning and no publicly held corporation owns 10% or more of its stock." (Docket No. 17). That response, however, failed to identify the members of Seaplane and the citizenship of those members.

The Court then ordered Seaplane to file a new disclosure statement. The Court also ordered Chen and Qian to show cause in writing why this case should not be remanded to the Superior Court for lack of federal subject-matter jurisdiction.

In response, Seaplane filed a new disclosure statement. It stated: "Seaplane is a California Limited Liability Company and has no parent corporation and no publicly held corporation owns 10% or more of its stock. Mr. Brown is the sole member of Seaplane and is a resident of the State of California." (Docket No. 24).

On November 20, 2023, Chen and Qian responded to the court's order to show cause in writing why this case should not be remanded. Defendants produced evidence that Brown was in fact a citizen of Massachusetts, while Chen and Qian are citizens of California. Defendants' evidence of Brown's Massachusetts citizenship included the police report from the 2022 accident, the pleadings in this case, and his own social-media posts.

On November 28, 2023, the Court ordered Brown to submit to jurisdictional discovery for a period of 75 days. The Court noted in its order that it "may have subject-matter jurisdiction over this matter based on diversity of citizenship, but the domicile of Neilson Brown (and therefore his citizenship, and that of Seaplane) is disputed." (Docket No. 27).

Also on November 28, the Court dismissed plaintiffs' claims against Mercury Services LLC pursuant to Fed. R. Civ. P. 4(m). On January 24, 2024, the Court dismissed plaintiffs' claims against Avis Car Rental Services LLC pursuant to the parties' joint stipulation for dismissal under Mass. R. Civ. P. 41(a)(1)(ii).[1]

The parties have completed jurisdictional discovery, including a deposition of Brown. (Docket No. 35, 1). On February 13, 2024, defendants filed a supplemental response to the order to show cause. The supplemental response provided a transcript of Brown's deposition and contends that "Brown was not domiciled in [California] at any relevant time," but has "always been a citizen" of North Carolina (*Id.* at 7).

As of this writing, paintiffs have not moved to remand the matter to the Superior Court for lack of subject-matter jurisdiction.

## II. Analysis

### A. Legal Framework

"The existence of subject-matter jurisdiction 'is never presumed.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1988)). As the party seeking to invoke federal jurisdiction, defendants here have the burden of showing that the jurisdictional requirements are satisfied. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001).

Federal jurisdiction here, if it exists, is based on diversity of citizenship under 28 U.S.C. § 1332(a). Diversity jurisdiction requires "complete diversity of citizenship as between all plaintiffs and all defendants." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008); *see*

---

[1] It is undisputed that the citizenships of Mercury and Avis are diverse from that of plaintiffs.

*Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005).[2]

For purposes of diversity jurisdiction, "a person is a citizen of the state in which he is domiciled." *Bank One, Texas v. N.A. Montle*, 964 F.2d 48, 49 (1st Cir. 1992). An individual's "domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (quoting C. Wright, A. Miller & E. Cooper, 13 B *Federal Practice & Procedure* § 3612, at 526 (1984)). "Domicile is determined as of the time the suit is filed, and once diversity jurisdiction is established, it is not lost by a later change in domicile." *Bank One*, 964 F.2d at 49.

A person can only have one domicile at a time. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 367 (1st Cir. 2001). Until a new one is acquired, the established one continues; the presumption is that the existing domicile continues until it is changed. *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979).[3] Courts typically take into account a variety of factors in considering one's domicile, including "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes . . . ." *Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004).

The citizenship of a limited liability company is "determined by the citizenship of all of its members." *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st

---

[2] There is no dispute that the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met.

[3] In order "to effectuate a change in that domicile (and, thus, a change in citizenship), the law requires that both residency and the intent to sustain that residency coexist." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 367 (1st Cir. 2001).

6

Cir. 2011) (internal quotation marks omitted).

Here, both defendants Chen and Quian are citizens of California. There is evidence that Brown could be a citizen of California, Massachusetts, or North Carolina; if he is a California citizen, the parties are not diverse, and the court is without subject-matter jurisdiction. There is no dispute that Brown was a citizen of North Carolina as of 2017. The critical question is whether he ever intended to change his domicile after that date and before this suit was filed in 2023.

### B.    Factual Background

Neilson Schuyler Brown was born and raised in Pennsylvania. (Docket No. 35, Exhibit A, 11-12, 17). He completed his undergraduate education at the University of North Carolina in 1993. (*Id.* at 11). After completing graduate school at the University of California at Berkeley and living abroad in France for approximately six years, he returned to North Carolina. (*Id.* at 17, 66). He lived at his mother's house in North Carolina from 2009 to 2017. (*Id.* at 17).

Brown started Seaplane, a retailer of clothing, in North Carolina in 2011.[4] In 2017, he opened a retail clothing store in Palm Springs, California. (*Id.* at 17, 21-22). He opened another store in Provincetown, Massachusetts, in 2018. (*Id.* at 29-31). Since that time, his California store typically has been open for business from October or November until May (that is, about six or seven months) and the Massachusetts store typically has been open from May to October (that is, about five months). (*Id.* at 14-15, 29-34, 39).[5] He recently opened a second store in California. (*Id.* at 23).

---

[4] Seaplane was organized as an LLC under California law in 2018. (*Id.* at 67-68).

[5] Brown enters into short-term commercial leases for the retail spaces for in California and Massachusetts. (*Id.* at 29-31, 39-41, 50-51, 54, 58-59).

Since 2018, for the most part, Brown has physically resided in California during the months that his Palm Springs stores are open, and in Massachusetts when the Provincetown store is open. (*Id.* at 15).

Brown rented an Airbnb property in California for the season in 2017 and 2018; beginning in 2019, he began periodically renting a house from a friend on a seasonal basis. (*Id.* at 15-16). He does not have a written lease for that property. (*Id.* at 15).

Brown occupied seasonal rental property in Massachusetts in 2018, and apparently again in 2019. (*Id.* at 32). He spent the summer of 2020 in North Carolina due to the pandemic. (*Id.* at 48-49). In May 2021, he purchased an Airstream trailer in which he lived while in Massachusetts in 2021, 2022, and 2023. (*Id.* at 51-54, 60-61, 69). The trailer is kept at a campground in Provincetown with a seasonal lease. (*Id.* at 51, 53). He registered the Airstream trailer in North Carolina and stores it in North Carolina when not using it in Massachusetts. (*Id.* at 52).

Brown has never owned any real estate in California, Massachusetts, or any other state. (*Id.* at 12-13).

When the Massachusetts store closed for the season in October 2018, Brown returned to North Carolina "for a few months" to "think about" and plan for the opening of a new store in Key West, Florida. (*Id.* at 37-38, 44). That store opened in December 2018. (*Id.* at 35-38). From December 2019 until March 2020, he split his time between Palm Springs and Key West. (*Id.* at 46-47). He never resided in Florida, however. (*Id.*). The Florida store closed in April 2020, at the start of the Covid-19 pandemic, and has not reopened. (*Id.* at 38).

Beginning in March 2020, because of the Covid-19 pandemic, the California store was closed for a period of time. (*Id.* at 46-47). Between March and May 2020, Brown remained

briefly in Palm Springs.  (*Id.* at 47-48).  He then returned to North Carolina and resided there for nine months, from May 2020 to February 2021.  (*Id.* at 48-49).  His stores were closed, but he continued to work on other aspects of his business, such as online sales.  (*Id.* at 49-50).

Brown returned to California in February 2021, remaining until May 2021, when he returned to Massachusetts.  (*Id.* at 50).  He spent about 45 days in North Carolina between leaving Massachusetts in October 2021 and arriving in California in January 2022.  (*Id.* at 56-57).

Brown testified that he took "a little trip home to North Carolina" for Christmas in 2022.  (*Id.* at 66).  Brown typically spends several weeks in December in North Carolina to spend the holiday season with family there.  (*Id.* at 37-38, 44, 56-57).  He also manages his mother's beach property in North Carolina.  (*Id.* at 55).

Brown has been registered to vote in North Carolina since about 1989 and has regularly voted in elections as a citizen of North Carolina since that time.  (*Id.* at 71-72).  He has never registered to vote in California or Massachusetts.  (*Id.* at 71-72).

Brown has a North Carolina driver's license, which was issued in 2018.  (*Id.* at 25-26, Dep. Ex. 1).  His driver's license states that his residential address is in Chapel Hill, North Carolina, which he testified is the address of a house owned by his mother.  (*Id.* at 26).  He apparently has never had a Massachusetts license.  He had a California license at one time, but lost it at some point and did not replace it because he "[has]n't needed it."  (*Id.* at 28).

Brown does not receive mail at any particular location.  He "gets everything electronically, because I'm always traveling."  (*Id.* at 63).  If business mail is sent to him in California, he has a staffer take a photo of it and send it to him.  (*Id.*).

Brown owns three automobiles, two of which he has always registered in North Carolina, including the one involved in the alleged accident. (*Id.* at 51, 69-71). He keeps one of those cars in North Carolina year-round. (*Id.* at 69-71). He keeps one car (the one involved in the alleged accident) with him in Massachusetts when he is there for the season; then drives it to North Carolina when the Massachusetts store closes for business at the end of each summer. (*Id.* at 69-71, 73). His third car is registered in California, and he keeps it there to use when he is there for the season. (*Id.* at 70).

Again, the Airstream trailer is registered in North Carolina. (*Id.* at 52). It appears that the boat trailer is registered there as well. [6]

Brown owns the boat that was involved in the alleged accident. (*Id.* at 72, 75). He purchased it in North Carolina in 2009, and has kept it registered in North Carolina since. (*Id.* at 72). At some point, he brought the boat from North Carolina to Massachusetts. (*Id.* at 72-77). He enters into annual contracts for the mooring of his boat in Massachusetts. (*Id.* at 75-77). He contracted with a Massachusetts company to store the boat in Massachusetts for two winters (2019-20 and 2020-21) and otherwise towed it back to North Carolina and stored it there over the winter. (*Id.*).

There is no evidence that Brown maintains a bank or brokerage account in California. In 2018, he opened an account at a Massachusetts bank. (*Id.* at 31).

At some point, Brown had a gym membership in California, but gave it up. (*Id.* at 18). He belongs to a local classic car group in Palm Springs, which has annual dues of $40. (*Id.* at 18-21). He does not belong to any other clubs or organizations in California. (*Id.* at 21).

---

[6] Brown testified at one point that "[a]ll [his] vehicles are registered in North Carolina." (*Id.* at 52). He later testified, however, that one of his automobiles is registered in California. (*Id.* at 70).

Beginning in 2022, he started teaching an exercise class in a park in Palm Springs. (*Id.* at 90-92). He belonged to a local health club when living in Massachusetts. (*Id.* at 76).

As of November 3, 2023, Brown's profile on LinkedIn indicated that his location was Provincetown, Massachusetts, and that the location of Seaplane Shirts was Chapel Hill, North Carolina. (Docket No. 25, Exhibit E, 2). A post on Instagram from "Seaplanesky" on July 31, 2023, indicates that he had recently returned to Provincetown from Philadelphia and states, "HOME SWEET HOME." (*Id.* at Exhibit F, 3, 13).[7]

The police report of the accident, dated May 22, 2022, indicates that Brown produced a North Carolina driver's license, but he reported that he lived at 31 Nelson Avenue in Provincetown. (*Id.* at Exhibit D, 2).

Both the complaint (filed January 16, 2023) and the first amended complaint (filed April 17, 2023) allege that Brown "is an individual residing at 296 Commercial Street, Provincetown, Massachusetts." (Docket No. 1, Exhibit C, 3; Docket No. 10, 2). The disclosure statement, filed June 20, 2023, states that Brown is "a resident of California." (Docket No. 17, 1).

### C.  Analysis

Whether Brown is still domiciled in North Carolina, or has changed it to California or Massachusetts, is a question without an obvious answer. In colloquial terms, he "lives" in both California and Massachusetts; that is where he normally physically resides and works. Between the two, he lives in California more of the time; indeed, at his deposition, he testified that "[California] is where I live." (Docket No. 35, Exhibit A, 90). But he only resides in California

---

[7] During his deposition, Brown was asked whether he was referring to Provincetown when he used the phrase "HOME SWEET HOME" on Instagram. (Docket No. 35, Exhibit A, 89). He responded: "Who knows." (*Id.*). He then clarified that he was referring primarily to his trailer, but also possibly to Provincetown as his home "for the summer." (*Id*).

for six or seven months in a typical year, and he has done little else to acquire a domicile in the state.

He has never changed his voter registration from North Carolina. He has never given up his North Carolina driver's license (although he apparently also had a California one for some period of time). He has never purchased a home or other real property in California. Since 2017, at least, he has never had a residential lease in California. He does not have a post-office box to accept mail. If he has a bank account in California, it is not reflected in the record. He belongs to only a single club or organization in California—a local classic-car club with a relatively minimal annual fee. Two of his three automobiles, his Airstream trailer, his boat, and (apparently) his boat trailer are registered in North Carolina; he has never taken any steps to change those registrations. And North Carolina is where he returned when the pandemic forced the closing of his businesses.

Furthermore, for five months every year, his links to California dwindle considerably. During those periods, his California ties consist of a shuttered store and a single registered automobile. And his Massachusetts ties are just as tenuous, if not more so.

Brown is of course free to structure his life as he pleases, and particularly to avoid Cape Cod winters and Sonoran Desert summers. But again, the legal question is not where he "lives," but what is his "domicile." More precisely, it is whether—having acquired a North Carolina domicile—he had changed it before the filing of this suit in 2023. Based on the Court's review of the evidence, and in light of the presumption of continuing domicile, the Court concludes that he did not. For present purposes, therefore, he is a "citizen" of North Carolina. And because he is the sole member of Seaplane Enterprises LLC, that entity is also a "citizen" of North Carolina

Accordingly, all plaintiffs are citizens of North Carolina, and all defendants are citizens

of California.  The Court therefore has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332(a).

/s/ F. Dennis Saylor IV<br>
F. Dennis Saylor IV<br>
Chief Judge, United States District Court

Dated:  February 22, 2024